# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MARILYN CAPPS,                           )
                                         )
                        Plaintiff,       )
                                         )
v.                                       )         Case No. CIV-12-1243-D
                                         )
STATE OF OKLAHOMA, ex rel. OFFICE OF     )
MANAGEMENT AND ENTERPRISE                )
SERVICES; and PRESTON L. DOERFLINGER,    )
Director,                                )
                                         )
                        Defendants.      )

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment [ Doc. No. 24]. Plaintiff has filed a timely response [Doc. No. 26], and the Motion is at issue.

### Factual and Procedural Background

Plaintiff Marilyn Capps is a female, former state employee who was working for the Office of Personnel Management (OPM) in August, 2011, when it and three other agencies were consolidated into the Office of State Finance (OSF). She alleges that male employees were provided better job placement opportunities, benefits, and compensation during the consolidation process. Plaintiff brings suit against the successor agency to OSF and its director (also director of OSF) asserting claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 as amended (Title VII), 42 U.S.C. § 2000e *et seq*., and gender-based pay discrimination under the Equal Pay Act, 29 U.S.C. § 206(d). Plaintiff also alleges that she took approved leave for a serious health condition in September, 2011, under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*., and that Defendants subsequently refused to allow her to return to work.

Based on these allegations, Plaintiff asserts a claim of interference with her FMLA rights. Finally, Plaintiff brings a supplemental state law claim under the Oklahoma Personnel Act, Okla. Stat. tit. 74, § 840-1.1 *et seq*, alleging that Defendants' conduct violated § 840-2.5 (the "Whistleblower Act") and § 840-2.9 (prohibiting discrimination).

## Defendants' Motion

Defendants seek the dismissal of some claims on jurisdictional grounds. Defendants contend that the Court lacks subject matter jurisdiction over Plaintiff's Title VII retaliation claim, and that the Court should decline to exercise subject matter jurisdiction over Plaintiff's claim under the Oklahoma Personnel Act. As to the remaining claims, Defendants seek a judgment on the merits. They contend Plaintiff cannot prevail on her Title VII claim of gender discrimination because she lacks sufficient facts to establish a *prima facie* case or to establish that Defendants' non-discriminatory reasons for their employment decisions are pretextual. Defendants also contend that Plaintiff cannot establish a violation of the Equal Pay Act or that she was retaliated against for utilizing FMLA leave.

## Standard of Decision

Summary judgment is appropriate "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if, under the governing law, it could affect the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *See id*. A movant need only point out that there is an absence of evidence to support an essential element of the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U. S. 317, 325 (1986). If the

movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and show a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment." *Aramburu v. Boeing Co.*, 12 F.3d 1398, 1402 (10th Cir. 1997).

### Undisputed Material Facts

**A.     Facts Related to Jurisdictional Issues**

Plaintiff filed an EEOC charge of discrimination on December 22, 2011, alleging sex discrimination in violation of Title VII and unequal compensation on account of her female gender in violation of the Equal Pay Act. *See* Defs' Motion, Ex. 3 [Doc. No. 24-3]. Plaintiff did not file a charge of retaliation, and did not receive an EEOC notice of her right to sue on any Title VII claim of retaliation.

**B.     Facts Related to Merits Issues**

Both Plaintiff and a male employee, Tony Gilmore, held the position of Financial Manager/ Comptroller D33B in their respective agencies that were consolidated into OSF effective August 26, 2011. Before the consolidation, Gilmore had worked for the Department of Central Services (DCS), while Plaintiff had worked for OPM. Defendant Preston Doerflinger, as director of OSF, approved plans by which certain employees were to be offered voluntary separation benefits, although the plans were devised at different times by agency officials at OPM and DCS.

The plan approved by Doerflinger on September 14, 2011, gave Gilmore 45 days to consider his offer, allowed him to revoke a separation agreement within 7 days, and required him to be employed by DCS/OSF on December 31, 2011, to receive separation benefits. Gilmore was offered

continued employment, wages, and benefits until December 31, 2011.  In exchange for voluntarily resigning his position at the close of business on December 31, 2011, Gilmore would receive payment for 18 months of employee-only health insurance premiums, longevity pay, a lump sum of $5,000.00, one week of pay for each year of service ($41,846.00), and payment of accumulated sick leave up to one-half of the employee's hourly rate not otherwise used for conversion to retirement credit.  *See* Pl.'s Resp. Br., Ex. 5 [Doc. No. 26-5].

In contrast, the plan offered to Plaintiff on September 21, 2011, gave her 48 hours to make a decision and required that she resign effective September 30, 2011, only nine days later.  Plaintiff's offer, like Gilmore's, included payment for 18 months of employee-only health insurance premiums and longevity pay.[1]  However, Plaintiff's package provided no lump sum payment, one week of pay for each year of service limited to 12 weeks ($16,258.86), and no payment for accumulated sick leave.  At the time, Plaintiff had 30 years of service as a state employee.  *See* Pl.'s Resp. Br., Ex. 19 [Doc. No. 26-19].  Plaintiff also points to facts suggesting that she received significantly less communication about the separation process than Gilmore.

Plaintiff did not accept the voluntary separation offer.  Instead, in an email message sent to her supervisor on September 23, 2011, Plaintiff stated that she planned to request FMLA leave, to be followed by annual leave until December 30, 2011, and retirement effective January 1, 2012.  Defendants later took the position that this message constituted Plaintiff's resignation.  Plaintiff denies this reading of her message, and has presented the testimony of her supervisor that he did not consider it a resignation.

---

[1] These "voluntary out" benefits are required by statute.  *See* Okla. Stat. tit. 74, § 840-2.28.

Plaintiff subsequently submitted a written request for FMLA leave which was approved October 4, 2011. Plaintiff's treating physician released her to return to work on December 22, 2011. Plaintiff attempted to return to work that day, but was informed by OSF that she would be required to take annual leave and remain off work. During her period of FMLA leave, Plaintiff had submitted an application to retire effective January 1, 2012. Notwithstanding this application, Plaintiff subsequently attempted to return to work on January 3, 2012, but was informed that "she had resigned and [OSF was] accepting that resignation and that she no longer worked there." *See* Meltabarger Dep. [Doc. No. 26-16], 97:10-12.

## Discussion

### A. Title VII Claim of Retaliation

Under the law of this circuit, federal courts lack jurisdiction over a Title VII claim that was not presented to the EEOC because exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII. *See Eisenhour v. Weber County*, 744 F.3d 1220, 1226-27 (10th Cir. 2014); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). Here, Plaintiff admits she did not present a retaliation claim to the EEOC, and she does not respond to Defendants' argument that the Court lacks subject matter jurisdiction over her Title VII retaliation claim. Therefore, the Court finds that Defendants are entitled to dismissal of Plaintiff's Title VII retaliation claim for lack of jurisdiction.

### B. Oklahoma Personnel Act Claim

Defendants assert that the Court should decline to exercise supplemental jurisdiction over Plaintiff's claim under provisions of the Oklahoma Personnel Act. Defendants argue that this claim is uniquely and solely a matter of state law and, thus, there are compelling reasons for this Court to

decline jurisdiction pursuant to 28 U.S.C. § 1367(c)(4).[2] Defendants state – without presenting facts supported in the manner required by Rule 56 – that Plaintiff initiated her Whistleblower Act and state law discrimination claims before the state administrative tribunal charged with resolving disputes between state employees and their agency employers, the Oklahoma Merit Protection Commission (OMPC), and that such claims are currently pending before the Oklahoma Court of Civil Appeals. Inconsistent with this statement, Defendants also argue that the Court should decline jurisdiction of Plaintiff's claim under the Whistleblower Act because Plaintiff did not raise this claim in the OMPC proceeding and she has failed to pursue administrative remedies for that claim.

In response, Plaintiff argues that the Court should hear her Whistleblower Act clam because it is not pending before the Oklahoma Court of Civil Appeals and has not been heard by any state tribunal. Plaintiff provides a copy of OMPC's Final Order in her administrative proceeding, which addresses only discrimination claims. *See* Pl.'s Resp. Br., Ex. 12 [Doc. No. 26-12]. With respect to Plaintiff's state law discrimination claim, she asserts that considering this claim in tandem with her Title VII claim will promote judicial efficiency and avoid duplication of effort.

Neither party addresses the nature of Plaintiff's claim for relief under the Oklahoma Personnel Act, which provides an administrative process for state employees to obtain "corrective action" from the OMPC. *See* Okla. Stat. tit. 74, § 840-6.6. The Act does not authorize the recovery of compensatory and punitive damages sought by Plaintiff on her state law claim. See Compl. [Doc. No. 1], p. 14. The Whistleblower Act expressly provides the available administrative remedies for a violation of that statute. *See id.* § 840-2.5(G)-(H). The Oklahoma Supreme Court has held that

---

[2] A federal district court may decline to exercise supplemental jurisdiction that otherwise exists for reasons enumerated in § 1367(c)(1)-(3) and "(4) in exceptional circumstances, [if] there are other compelling reasons for declining jurisdiction."

the Whistleblower Act's remedies are exclusive; no implied right of action is necessary because "the statutory remedies provided [are] sufficient to protect the Oklahoma public policy goal of protecting employees who report the wrongful governmental activities." *Shephard v. CompSource Okla.*, 209 P.3d 288, 292 (Okla. 2009). Thus, this Court lacks jurisdiction of any Whistleblower Act claim because Plaintiff admits she has not pursued her administrative remedy under the statute.[3]

As to Plaintiff's discrimination claim, judicial remedies for a termination of employment in violation of state public policy may be available in some circumstances under a tort-based theory recognized in *Burk v. K-Mart*, 770 P.2d 24 (Okla. 1992). However, any tort claim against a state agency or official is subject to the exclusive remedy provisions of the Governmental Tort Claims Act (GTCA), Okla. Stat. tit. 51, § 151 *et seq*. The written notice requirement of GTCA "is a mandatory prerequisite jurisdictional requirement to filing a claim for tort damages." *See Hall v. GEO Group, Inc*., 324 P.3d 399, 400-01 (Okla. 2014) (footnotes omitted); *see also Harmon v. Cradduck*, 286 P.3d 643, 652 (Okla. 2012). Plaintiff does not allege in her pleading that she has satisfied this notice requirement. Thus, the Court lacks jurisdiction of any state law tort claim.

As to equitable remedies sought by Plaintiff on her state law discrimination claim, Plaintiff admits this claim was the subject of an administrative proceeding before the OMPC and that an appeal of the OMPC's decision remains pending before Oklahoma courts. The Court finds that judicial comity and avoidance of interference with state law review of Plaintiff's discrimination claim are compelling reasons for declining jurisdiction over that claim. Therefore, the Court

---

[3] The Court has "an independent obligation to determine whether subject-matter jurisdiction exists" and may raise the issue *sua sponte* at any time. *Image Software, Inc. v. Reynolds & Reynolds Co*., 459 F.3d 1044, 1048 (10th Cir. 2006).

declines to exercise supplemental jurisdiction of Plaintiff's claims under the Oklahoma Personnel Act pursuant to 28 U.S.C. § 1367(c)(4).

**C.     Title VII Claim of Gender Discrimination**

To establish a *prima facie* case of gender discrimination under Title VII, a plaintiff must establish that 1) she is a member of a protected class; 2) she suffered an adverse employment action; and 3) "the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). An inference of discrimination may be shown by circumstantial evidence, for example, by showing that a similarly situated male employee was treated more favorably than the female plaintiff. *See Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1231-32 (10th Cir. 2009). It is undisputed that Plaintiff is a member of a protected class. Plaintiff has presented evidence that she suffered an adverse employment action in the termination of her employment after she declined a voluntary separation package. She has also presented facts from which a reasonable jury could conclude that a similarly situated male employee received a more favorable voluntary separation offer than Plaintiff. Accordingly, the Court finds that Plaintiff has presented sufficient facts from which a *prima facie* case of discrimination could be found.

Assuming that Defendants have proffered legitimate, non-discriminatory reasons for the different treatment of Gilmore and Plaintiff – that they were employed by different divisions of OSF – the Court concludes that Plaintiff has demonstrated sufficient facts from which a reasonable finding could be made that Defendants' reasons are pretextual, when the facts are viewed in the light most favorable to Plaintiff. Among the evidence of pretext is Doerflinger's testimony that Plaintiff was treated differently because she was not supportive of the "consolidation initiative." *See*

Doerflinger Dep. [Doc. No. 26-4], 54:10-22, 66:9-25. And contrary to Defendants' position that Gilmore's offer of a voluntary separation was made before consolidation, the record reflects that Doerflinger did not approve Gilmore's offer until after consolidation and Gilmore did not accept it until September 26, 2011, after the date on which Plaintiff was required to respond to the less-favorable offer tendered to her.

In short, the Court finds that Plaintiff has come forward with sufficient facts to demonstrate a genuine dispute regarding her claim of gender discrimination in the OSF separation process. Therefore, Defendants are not entitled to summary judgment on Plaintiff's Title VII discrimination claim.

**D.      Equal Pay Act**

Defendants assert that Plaintiff cannot establish an Equal Pay Act (EPA) claim because Plaintiff's salary exceeded the salary of her male comparator, Tony Gilmore, by $2,455.48 and because voluntary separation payments are not wages. They also contend OPM and DCS were not the "same establishment," although they cite no legal authority for the proposition that this fact is an element of Plaintiff's EPA claim.

Plaintiff's claim concerns the different severance packages for two comparable employees of OSF. Plaintiff points out that the definition of "wages" under the EPA is very broad. Federal regulations explain how inclusive the term "wages" is intended to be:

> Under the EPA, the term "wages" generally includes <u>all payments</u> made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation <u>irrespective of the time of payment</u> whether paid periodically or deferred until a later date, and <u>whether called wages</u>, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car,

> gasoline allowance, <u>or some other name</u>. Fringe benefits are deemed
> to be remuneration for employment. . . .

29 C.F.R. § 16210 (emphasis added). "Fringe benefits" include "such terms as medical, hospital, accident, life insurance and retirement benefits; profit sharing and bonus plans; leave; and other such concepts." 29 C.F.R. § 1620.11(a). Federal courts have recognized severance pay as a form of wages for purposes of the EPA. *See Trainor v. SBC Servs., Inc.*, 2004 WL 2958684 (N.D. Ill. Dec. 20, 2004); *Rinaldi v. World Book, Inc.*, 2002 WL 172444 at *3 (N.D. Ill. Feb. 4, 2002) ("severance pay constituted payments as remuneration for employment").

EPA claims are different from Title VII claims and "do not follow the same *McDonnell Douglas* burden-shifting framework." *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006). The Tenth Circuit has explained the analysis as follows:

> EPA claims proceed in two steps. First, the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for performing substantially equal work. Having met this, the burden of persuasion then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons. These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; (4) a disparity based on any factor other than sex. If the employer fails to convince the jury with its evidence of one or more of the "affirmative defenses" . . . the plaintiff will prevail on her prima facie case.

*Id.* (internal quotations, citations and footnote omitted).

In this case, Gilmore's severance package permitted him to remain employed and earn wages for an additional three months longer than offered to Plaintiff, and he received more generous payment benefits than Plaintiff. He received pay for his years of service equaling $41,846.00, while Plaintiff was capped at twelve weeks of service, or $16,258.86. Gilmore was also paid for accumulated sick leave but Plaintiff was offered no such pay. Assuming Plaintiff can carry her

burden to establish a prima facie case – by proof that she was performing work substantially equal to male employees, "the conditions where the work was performed were basically the same," and male employees were paid more (*see Mickelson*, 460 F.3d at 1311 n.5) – then Defendants bear the burden to prove the disparity was based on a factor other than gender. On the record presented, the Court finds that a genuine dispute of material facts prevents a determination that Defendants have carried that burden.

Therefore, the Court finds that Defendants are not entitled to summary judgment on Plaintiff's EPA claim.

## E.    FMLA Claim

Defendants argue that Plaintiff lacks any evidence their decisions were based on retaliation for her utilization of FMLA leave. Defendants contend Plaintiff was not allowed to return to work on December 22, 2011, and was required to take annual leave in the best interest of the agency pursuant to Merit Rule 530:10-15-11, because OSF had already accepted Plaintiff's resignation and restructured its financial unit in reliance on her resignation. Defendants do not cite legal authority or address specific elements of proof. Plaintiff, on the other hand, presents argument regarding the elements of her claim as one of unlawful interference with FMLA rights.[4]

---

[4] FMLA authorizes two types of claims: 1) interference with an employee's right to take FMLA leave in violation of 29 U.S.C. § 2615(a)(1); and 2) retaliation against an employee for taking FMLA leave in violation of 29 U.S.C. 2615(a)(2). As explained by the Tenth Circuit:

> An FMLA interference claim is based on an employer's alleged denial of an employee's FMLA rights, including a wrongful refusal to restore an employee after the expiration of the protected leave. In contrast, a retaliation claim is premised on an adverse employment action that was allegedly motivated by the employee's choice to take the protected leave.

*Robert v. Board of County Comm'rs*, 691 F.3d 1211, 1219 n.6 (10th Cir. 2012). The Court understands that
(continued...)

To establish an FMLA interference claim, Plaintiff must show: 1) she was entitled to FMLA leave; 2) some adverse action by her employer interfered with her right to take FMLA leave; and 3) the employer's action was related to the exercise of FMLA rights. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007); *Metzler v. Federal Home Loan Bank*, 464 F.3d 1164, 1180 (10th Cir. 2006). Under an interference theory, "a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden-shifting analysis does not apply." *See Metzler,* 464 F.3d at 1180 (citations and emphasis omitted). Instead, "the employer bears the burden of proof on the third element of an interference claim once the plaintiff has shown that her FMLA leave was interfered with." *Campbell*, 478 F.3d at 1287. "Once a plaintiff has proved that her employer has interfered with her right to take FMLA leave, the employer bears 'the burden of proving that an employee, laid off during FMLA leave, would have been dismissed regardless of the employee's request for, or taking of, FMLA leave.'" *Id.* at 1289; *Metzler*, 464 F.3d at 1180; *see also Twigg v. Hawker Beechcraft Corp.* 659 F.3d 987, 1007 (10th Cir. 2011).

In this case, it is undisputed that Plaintiff was entitled to and utilized FMLA leave. It is also undisputed that OSF interfered with Plaintiff's FMLA leave rights by refusing her request to return to work when her doctor authorized her to do so without restriction on December 22, 2011. On the record presented, Defendants have failed to carry their burden to prove that the refusal was unrelated to Plaintiff's exercise of FMLA rights. Defendants argue that OSF's decision was based on a determination that in the best interest of the agency, Plaintiff should be required to remain on pre-

---

[4](...continued)
only an interference claim is asserted here.

approved annual leave. Plaintiff has presented evidence, however, that she had not previously requested annual leave and that no annual leave was approved until December 23, 2011. *See* Pl.s' Resp. Br., Ex. 28 [Doc. No. 26-28]. Accordingly, the Court finds that a genuine dispute of material facts exists. Defendants have not shown that they are entitled to summary judgment on Plaintiff's FMLA claim.

## Conclusion

For these reasons, Defendants are entitled to dismissal of Plaintiff's Title VII retaliation claim for lack of subject matter jurisdiction and dismissal of Plaintiff's claim under the Oklahoma Personnel Act because the Court declines to exercise supplemental jurisdiction over that claim. Regarding all other claims, the Court finds that summary judgment is inappropriate.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 24] is GRANTED in part and DENIED in part, as set forth herein. Plaintiff's Title VII retaliation claim and Plaintiff's claim under the Oklahoma Personnel Act are dismissed without prejudice. All other claims asserted in the Complaint remain for trial.

IT IS SO ORDERED this 30th day of June, 2014.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE